FILED

December 22, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 1:51 PM



**TENNESSEE BUREAU OF WORKERS' COMPENSATION CLAIMS**
**IN THE COURT OF WORKERS' COMPENSATION CLAIMS**
**AT NASHVILLE**

| | | |
|---|---|---|
| **DONNA WILHITE,** | ) | **Docket No. 2016-06-0414** |
| **Employee,** | ) | |
| **v.** | ) | **State File No. 19556-2016** |
| | ) | |
| **LOWES MILLWORKS,** | ) | **Judge Joshua Davis Baker** |
| **Employer.** | ) | |

**EXPEDITED HEARING ORDER**
**FOR MEDICAL BENEFITS**

This matter came before the Court on December 15, 2016, upon the Request for Expedited Hearing filed by Donna Wilhite. The present focus of this case is Ms. Wilhite's entitlement to medical benefits and temporary disability benefits. For the reasons set forth below, the Court holds Ms. Wilhite will likely succeed at a hearing on the merits in proving her entitlement to medical benefits, and orders Lowes Millworks to provide those benefits. The Court also holds Ms. Wilhite is unlikely to succeed at a hearing on the merits in her claim for temporary disability benefits and denies her request for those benefits.[1]

**History of Claim**

This case concerns an injury Ms. Wilhite allegedly suffered to her right-ring finger on September 19, 2015, while staining a door on the production line at Lowes. Ms. Wilhite testified, as she stained doors during her weekend shift, she experienced a severe cramp in her hand, and her right-ring finger became difficult to bend. Ms. Wilhite said she reported the condition to her supervisor who "shrugged his shoulders and walked off." She continued to work, and her finger began to swell. She took an Ace bandage from the first-aid kit, wrapped her finger and continued working. Ms. Wilhite reported the condition to her "team-lead" at the end of her shift and applied ice to her finger at home.

---

[1] A complete listing of exhibits and the technical record admitted at the Expedited Hearing is attached to this Order as an appendix.

Ms. Wilhite returned to work the following day. By the end of this shift, her finger had swollen considerably and turned purple. She again reported her condition to her supervisor and team-lead, but "nothing was documented or done about it." At the end of the shift, a coworker, Marty Lamborn, cut a ring off her finger with a pair of tin snips. (Ex. 2, 3.) The swelling subsided as well as the discoloration, but the pain continued.

Ms. Wilhite did not receive any medical treatment from Lowes and went to an orthopedic doctor on September 28, utilizing her private insurance for payment. At that point, her finger had become "stuck" in a bent position with the tip touching the palm of her right hand. She received a Cortisone shot in the base of the right-ring finger, which provided some temporary relief.

Approximately six months later, Ms. Wilhite experienced the same symptoms in her right-ring finger while working on the production line at Lowes. She went "into the office" at that time and told Human Resources she had suffered a previous injury to her finger, which was not documented. At that time, Lowes contacted its third-party administrator, Sedgwick CMS. Lowes also provided Ms. Wilhite a panel of physicians. She selected a physician from the panel, but testified Lowes told her she would need to wait for approval before seeing the doctor.

Sedgwick contacted Ms. Wilhite, and she provided three oral statements detailing the incident and her injury. Approximately one week later, a Sedgwick representative contacted Ms. Wilhite and told her the claim had been denied. Neither party submitted written documentation showing that Sedgwick denied the claim.

Ms. Wilhite never saw a doctor under workers' compensation. She continued to seek treatment on her own by utilizing her private insurance and paying the copays out-of-pocket. She came under the care of Dr. Robert Pickering, who diagnosed her with trigger finger and recommended surgery. Although her private insurance initially approved the surgery and it was scheduled, the approval was later rescinded when it came to light that her injury might be work-related. (Ex. 2.) Ms. Wilhite cancelled her surgery and filed this claim seeking medical and temporary disability benefits.

During the period of time Ms. Wilhite was dealing with her trigger-finger condition, she also developed De Quervain's tenosynovitis in her right wrist, which is not at issue in this case. She underwent surgery for this condition and missed several weeks of work. At the hearing, Ms. Wilhite admitted that she lost no time from work due to her trigger-finger condition.

2

**Findings of Fact and Conclusions of Law**

The following general principles govern adjudication of this proceeding. Ms. Wilhite has the burden of proof on all essential elements of her workers' compensation claim. *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987); *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). She need not prove every element of her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, Ms. Wilhite has the burden to come forward with sufficient evidence from which this Court can determine that she is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2016).

To recover benefits, Ms. Wilhite must prove she suffered an "injury" as that term is defined by the Workers' Compensation Law: "Injury means an injury by accident . . . arising primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14) (2016). In order to be compensable as an injury by accident, the injury must be "caused by a specific incident, or set of incidents, arising primarily out of an in the course and scope of employment, and is identifiable by time and place of occurrence[.]" *Id*. at § 50-6-102(14)(A). "An injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty-percent (50%) in causing the injury, considering all causes." *Id*. at § 50-6-102(14)(B).

In this Court's opinion, Ms. Wilhite's uncontroverted testimony that she developed pain and swelling in her right-ring finger while staining doors on a production line at work was sufficient to satisfy her burden of proving the accident resulted from a specific set of incidents that arose primarily out of and in the course and scope of her employment. *See Id*. at § 50-6-102(14)(A). She reported the incident to her supervisors on more than one occasion.

Upon being provided notice of a workplace injury, the Workers' Compensation Law requires an employer to "designate a group of three (3) or more independent reputable physicians . . . from which the injured employee shall select one (1) to be the treating physician." *Id.* at § 50-6-204(a)(3)(A)(i). The administrative rules governing procedures in the Bureau of Worker's Compensation provide, "[u]pon notice of any workplace injury . . . the employer shall immediately provide the injured employee a panel of physicians that meets the statutory requirements for treatment of the injury." Tenn. Comp. R. & Regs. 0800-02-01-.25(1) (2016). Furthermore, an employer who fails to provide a medical panel runs the risk of being required to pay the cost of treatment an employee secures on her own. *See Young v. Young Electric Co., et al.*, No. 2015-06-0860

3

2016 TN Wrk. Comp. App. Bd. LEXIS 24, at *16-19 (Workers' Comp. App. Bd. May 25, 2016).

Ms. Wilhite testified, without contradiction, that she reported the condition of her finger to her supervisor on the day she first experienced hand cramps and finger swelling. Lowes should have provided Ms. Wilhite a panel of physicians that day. It failed to do so, forcing Ms. Wilhite to seek treatment on her own.

It was not until six months had passed and Ms. Wilhite's finger condition returned that Lowes finally offered her a panel of physicians. After offering the panel, however, Lowes declined to make her an appointment and, instead, denied the claim outright without Ms. Wilhite ever seeing a doctor. Ms. Wilhite then again sought treatment on her own through her personal insurance and paid out-of-pocket for the copays.

The Court finds that Lowes failed in its duty to provide Ms. Wilhite timely medical care. For that reason, the Court refers this matter to the Penalty Unit for consideration of whether Lowes should be assessed a civil penalty.

The Court further finds that Ms. Wilhite reasonably sought medical treatment on her own when Lowes failed to provide care. Ms. Wilhite is currently treating with Dr. Pickering.[2] The Court appoints Dr. Pickering as the authorized treating physician and orders Lowes to provide continuing care with that physician.

Ms. Wilhite also seeks temporary disability benefits. Ms. Wilhite admitted she missed no time from work due to her trigger-finger condition. Accordingly, the Court denies her request for temporary disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Lowes shall provide Ms. Wilhite medical care with the authorized treating physician, Dr. Pickering.

2. Ms. Wilhite's request for temporary disability benefits is denied at this time.

---

[2] Ms. Wilhite requested reimbursement for past medical expenses and her out-of-pocket expenses. Although she included some of the medical bills and copay receipts with the Dispute Certification Notice, she never made them an exhibit at the heaing. Without the bills being in evidence, the Court cannot order Lowes to repay these costs.

3. The clerk shall forward a copy of this order to the Penalty Unit for consideration of assessing a civil penalty against Lowes for its failure to provide timely medical care.

4. This matter is set for a Scheduling Hearing on **February 13, 2017, at 9:30 a.m. (CDT)**. The Court will convene the hearing via telephone. You must call 615-741-2113 or toll-free at 855-874-0474 to participate in the Hearing.

5. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

6. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471.

**ENTERED ON THIS THE 22ND DAY OF DECEMBER, 2016.**

_____

**Judge Joshua Davis Baker**
**Court of Workers' Compensation Claims**

5

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk within seven business days of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.000. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if

any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:

1. Medical Records (25 pages)
2. Affidavit Donna Wilhite
3. Affidavit of Steve Lamborn
4. Wage Statement
5. Operative Report of June 20, 2016
6. Letter from Lowe's regarding surgery
7. Letter from Lowe's regarding termination
8. Letter from Cigna regarding short-term disability filed
9. First Report of Injury
10. C-31 and C-42 forms
11. Ms. Wilhite's written statement

Technical Record:[3]

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing

---

[3] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Compensation Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent to the following recipients by the following methods of service on this the 22nd day of December, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| **Donna Wilhite** | | | X | dkw3dogd@yahoo.com |
| **Jordan Puryear** | | | **x** | jordan.puryear@leitnerfirm.com |
| **Kenny Veit** | | | X | kenny.veit@leitnerfirm.com |

**Penny Shrum, Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

9